UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CRIMINAL ACTION NO. 3:19-CR-00131-GNS

UNITED STATES OF AMERICA                                                                                    PLAINTIFF

v.

KENDRICK C. BROWN                                                                                              DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's three Motions to Suppress and Request for a *Franks* Hearing[1] (DNs 62, 63, 64). The motions are ripe for adjudication. For the reasons that follow, Defendant's First Motion to Suppress (DN 62) is **GRANTED**, while Defendant's Second Motion to Suppress and Request for a *Franks* Hearing (DN 63) and Defendant's Third Motion to Suppress (DN 64) are **DENIED**.

### I.      BACKGROUND

Defendant Kendrick C. Brown ("Brown") was indicted for one count of possession of a firearm by a prohibited person. (Indictment 1, DN 8). Brown has filed three separate motions to suppress and has requested a *Franks* hearing. (Def.'s First Mot. Suppress 1-3, DN 62; Def.'s Second Mot. Suppress & Req. Hr'g 1-2, DN 63; Def.'s Third Mot. Suppress 1-2, DN 64).

At approximately 1:06 p.m. on May 13, 2019, officers from the Louisville Metro Police Department responded to a shooting in the area of 1033 West Broadway in Louisville. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 1, DN 67). Security cameras in the area captured the

---

[1] *See Franks v. Delaware*, 438 U.S. 154, 155-56 (1978) ("[W]e hold that, where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.").

1

shooting between two individuals, later identified as Brown and Devon Johnson ("Johnson"). (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). Brown can be seen on the video arriving shortly before the shooting in a blue Dodge Ram pickup truck. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). After the shooting, the Dodge Ram departed the scene. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). One 911 caller gave the description of the blue truck and reported the license plate number. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2).

Surveillance video captured Brown arriving at the University of Louisville Hospital at around 1:16 p.m. with a gunshot wound to the face. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). Shortly after, a Louisville Metro Police detective spotted the blue Dodge Ram in a parking garage near University of Louisville Hospital. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). Upon stopping the truck, the detective noticed blood inside. The woman driving the truck stated that her son, Brown, had just called her and asked her to pick up his children from the hospital. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). The woman then consented to a search of her phone and pointed out two calls she received from Brown at 1:05 p.m. and 1:12 p.m. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). The truck was later found to have blood matching the DNA profile of Brown. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2). At the conclusion of the stop, the truck, which belongs to Brown, was towed to a secure location. (Def.'s Third Mot. Suppress 1; Pl.'s Resp. Def.'s Third Mot. Suppress 2). The government's seizure of the truck is the subject of Brown's third motion to suppress because a warrant was not obtained for the truck until the next day. (Def.'s Third Mot. Suppress 1-2).

At approximately 2:06 p.m., Detective Kendra Burawski ("Burawski") contacted the Louisville Metro Police Department's Crime Scene Unit and requested a technician respond to the

University of Louisville Hospital parking garage. (Def.'s First Mot. Suppress 1). A technician arrived at approximately 2:52 p.m. and collected a number of items from the truck, including Brown's silver/white Apple iPhone, model A1428. (Def.'s First Mot. Suppress 1-2). Brown's first motion to suppress challenges this warrantless seizure of his cell phone. (Def.'s First Mot. Suppress 1-3).

On May 30, 2019, Burawski obtained two search warrants for various items, and on June 14, 2019, Burawski obtained an additional warrant to search Brown's cell phone. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 3). Brown's second motion to suppress challenges the validity of these search warrants as being the product of alleged material false statements on the part of Burawski, which also forms the basis for Brown's request for a *Franks* hearing. (Def.'s Second Mot. Suppress & Req. Hr'g 1-2).

Notably, a firearm was located in the area of 917 East Chestnut Street, an area relatively close to the University of Louisville Hospital. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 1-2). That firearm has been found to contain a DNA profile matching Brown's. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 2).

## II. DISCUSSION

### A. Brown's First Motion to Suppress

It appears that the United States has conceded that the seizure of Brown's cell phone was unconstitutional, as the United States has not responded to Brown's first motion to suppress. The United States filed direct responses to Brown's second motion to suppress and request for a *Franks* hearing and Brown's third motion to suppress, but did not directly respond to Brown's first motion to suppress. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 1-9; Pl.'s Resp. Def.'s Third Mot. Suppress 1-5, DN 68). A review of those responses reveals no counterargument to Brown's

position that the government's initial warrantless seizure of his cell phone on May 13 was unconstitutional. "Once a defendant shows a search and seizure was warrantless, the search and seizure are *per se* illegal, and the burden is on the government to show that one or more of the exceptions to the Fourth Amendment's warrant requirement apply." *United States v. Jackson*, No. 1:14-CR-29, 2015 WL 4509452, at *8 (E.D. Tenn. July 24, 2015). The warrant to search Brown's cell phone was not obtained until June 14, 2019, around a month after the government's initial seizure of Brown's cell phone. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 3; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 5, at 1-5, DN 67-5). At this point, it appears the United States has conceded that Brown's cell phone was obtained illegally. Brown's first motion to suppress will therefore be granted.

### B. Brown's Third Motion to Suppress

In his third motion to suppress, Brown challenges the government's warrantless seizure of his truck. (Def.'s Third Mot. Suppress 1-2).[2]

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things

---

[2] Brown's third motion to suppress should be addressed before Brown's second motion to suppress. Brown's second motion to suppress challenges the validity of search warrants containing, in part, information obtained through the initial seizure of Brown's truck by police. (Def.'s Second Mot. Suppress & Req. Hr'g 1-2; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 3, at 4-5, DN 67-3; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 4, at 2-3, DN 67-4; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 5, at 2-3, DN 67-5). The constitutionality of the initial seizure of Brown's truck would arguably dictate, in part, the constitutionality of those search warrants and the subsequent searches based on them. *See United States v. Galaviz*, 645 F.3d 347, 354 (6th Cir. 2011) ("[T]he 'fruit of the poisonous tree' doctrine . . . bars the admissibility of evidence which police derivatively obtain from an unconstitutional search or seizure." (internal quotation marks omitted) (citations omitted)).

to be seized." U.S. Const. amend IV. As the Sixth Circuit has noted, "[a] warrantless seizure of an automobile is reasonable [and thus constitutionally permissible] if there is 'probable cause that an automobile contains evidence or fruits of a crime plus "exigent circumstances."'" *United States v. Swanson*, 341 F.3d 524, 531 (6th Cir. 2003) (citation omitted).

The police possessed the requisite probable cause initially to seize Brown's truck. Multiple 911 calls revealed an individual involved in a shooting having arrived at the scene in an identifiable vehicle. That same vehicle—i.e., the blue Dodge Ram—verified by its description and license plate number relayed from a witness was found within an hour later in the parking garage of the hospital arrived at by an individual with a gunshot wound to his face. On these facts, it must certainly can be said that "[t]here was 'a fair probability that contraband or evidence of a crime' would be found inside the automobile." *Id*. at 532 (quoting *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Exigent circumstances also justified the warrantless seizure. The blue Dodge Ram was not immobilized—Brown's mother was driving it. *See id.* at 532-33 (exigent circumstances prong satisfied when car could have been freely driven away). For this reason, like in *Swanson*, the government here was "justified in seizing the [vehicle] and searching it at a later time." *Id*. at 533 (citations omitted). Finally, the government's additional act of towing away Brown's truck was reasonable. *See Workman v. Cardwell*, 471 F.2d 909, 910 (6th Cir. 1972) (finding "permissible" the warrantless towing of a defendant's vehicle after police possessed probable cause that vehicle was linked to a robbery).

The government's actions as it relates to the seizure of Brown's truck were constitutional, so Brown's third motion to suppress will be denied.

C.      **Brown's Second Motion to Suppress and Request for a *Franks* Hearing**

In his second motion to suppress, Brown challenges the validity of the search warrants obtained by Burawski as being the product of material false statements Burawski made and requests a *Franks* hearing on this matter. (Def.'s Second Mot. Suppress & Req. Hr'g 1-2).

The Sixth Circuit has outlined the requisite showing a defendant must make to obtain a *Franks* hearing:

> To obtain a *Franks* hearing, the movant must provide a substantial preliminary showing that a false statement was made either knowingly or intentionally, or with reckless disregard for the truth. The movant must *also* show that the allegedly false statements were necessary for the magistrate's determination of probable cause. Therefore, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." What remains of the affidavit establishes probable cause if it "provide[s] the magistrate judge with a basis for finding there was a fair probability that contraband or evidence of a crime would be found at" the stated location.

*United States v. Mastromatteo*, 538 F.3d 535, 545 (6th Cir. 2008) (internal citation omitted) (citation omitted).

Brown alleges Burawski made the following false statements in all three of the challenged search warrants: "Through state/federal cooperative forensic examinations, the above mentioned weapon was found to be related to the spent casings found on scene of 1033 W. Broadway. This is considered to be a preliminary lead." (Def.'s Second Mot. Suppress & Req. Hr'g 1; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 3, at 5; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 4, at 2-3; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 5, at 3). To start, the United States argues that Brown cannot show that this statement is false. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 6-7). Burawski's statements, in fact, appear to be true: A preliminary investigative lead from the National Integrated Ballistic Information Network indicated a correlation between the firearm bearing Brown's DNA and the cartridge casings found

on the scene at 1033 West Broadway. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g 1-2). It was only later forensic examinations that revealed "[t]he brand of firearm(s) that fired the . . . cartridge casings could not be determined." (Def.'s Second Mot. Suppress & Req. Hr'g 2). Burawski's initial statements supporting the warrant request accurately reflected the preliminary "presumptive" lead from the May 14 ballistics report,[3] regardless that later forensic analysis did not confirm the findings of earlier forensic analysis. Burawski's statements **at the time they were made** appear to have been true. It cannot be said, therefore, that Burawski made a false statement to secure the three warrants Brown now challenges.

The United States also argues that Burawski's affidavit contains sufficient content, excluding Burawski's alleged false statements, to support a finding of probable cause. The objects of the three search warrants Brown takes issue with include: (1) buccal swabs from Brown; (2) his silver/white Apple iPhone, model A1428; and (3) cell tower information and cell phone records for a phone number alleged to be Brown's. (Def.'s Second Mot. Suppress & Req. Hr'g 1; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 3, at 2; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 4, at 1; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 5, at 1 & 4). The United States points to the following statements from Burawski's affidavit that evidence the existence of probable cause even without Burawski's purportedly false statement:

> On May 13, 2019, at approximately 1306 hours, the First Division responded to report of a shooting in the area of 1033 W. Broadway. Both victims departed the scene prior to police arrival and drove themselves to the hospital. Victim #1 arrived at University Hospital with a gunshot wound to the face. Victim #2 arrived at Norton Hospital with a gunshot wound to the abdomen and was later transported to University Hospital. Both are expected to survive their injuries. Video footage from the area of the scene shows both victim's firing weapons at one another, causing each other's injuries. The investigation is ongoing.

---

[3] The June 25, 2019, ballistics report could neither identify nor eliminate the casings from the crime scene as coming from the Sig Sauer pistol allegedly linked to Brown. (Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 2, at 3, 4, DN 67-2).

Acting on the information received, affiant conducted the following independent investigation:

- Victim #1 was identified as . . . Brown . . . .
- Mr. Brown arrived at University Hospital in a blue Dodge Ram. Video footage from the area of the scene at 1033 W. Broadway depicts a vehicle matching the above description as being involved in the shooting. A person matching the description of Mr. Brown can be seen entering and exiting that vehicle. A 911 caller also reported the above listed vehicle and was able to provide a license plate number . . . .
- This vehicle was found being driven by Mr. Brown's mother . . . in the parking garage associated with University Hospital. Blood was observed within the vehicle by the detective conducting the traffic stop. During an interview, [Brown's mother] states that her son called her and told her to come get his kids who were in the car with him from University Hospital. This is when the car keys were passed to her and she took possession of the vehicle.
- First Division officers located a gun with possible blood on it in the area of 917 E. Chestnut St. This is an address in the area of University Hospital. This weapon was a Sig Sauer 9mm Semi-Auto Pistol which was reported stolen from Harrison County, Indiana.
  . . .
- During an interview with [Brown's mother] she consented to a search of her cell phone. In her call logs she verified the [relevant] number . . . as belonging to her son . . . . He called once at 1:05pm EST and another time at 1:12pm EST. [Brown's mother] states that these calls were made to her while [Brown] was in route to the hospital.

(Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 3, at 4-5; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 4, at 2-3; Pl.'s Resp. Def.'s Second Mot. Suppress & Req. Hr'g Ex. 5, at 2-3).

Based on these facts, Burawski's affidavit provided a sufficient basis for the finding of a fair probability that a buccal swab of Brown, a search of his cell phone, and information about the number identified as being Brown's would reveal evidence of a crime. Surveillance footage at the scene of the shooting revealed an individual matching Brown's description involved in the shooting and having arrived at the scene in an identifiable vehicle. That same vehicle, verified by the license plate number relayed from a witness, was found in the parking garage of the hospital

8

where an individual matching Brown's description arrived bearing a gunshot wound to the face and being driven by Brown's mother. Brown's mother essentially confirmed Brown's cell phone number and that the truck was Brown's. Blood was found in the vehicle and on a stolen firearm found near the hospital. It was fairly probable, based upon these circumstances, that a swab from Brown would yield DNA matching the DNA found in the truck and on the weapon. It was also fairly probable that the cell phone and information and records associated with that cell phone would provide information about the reported shooting. Because Burawski's affidavit, even without reference to the later-disproven ballistics report, contains sufficient content supporting a finding of probable cause, a *Franks* hearing on this matter is unnecessary.

Brown has not made the requisite showing for a *Franks* hearing, nor has he provided any other reason to suggest a deficiency in the three warrants he challenges. Brown's second motion to suppress and request for a *Franks* hearing will therefore be denied.

### III.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1.     Defendant's First Motion to Suppress (DN 62) is **GRANTED**.

2.     Defendant's Second Motion to Suppress and Request for a *Franks* Hearing (DN 63) is **DENIED**.

3.     Defendant's Third Motion to Suppress (DN 64) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

July 9, 2020

cc:     counsel of record